UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JASMIN JOHNSON,                                              Docket No.: 20-Civ-5685
                Plaintiff,

    -against-                                           **COMPLAINT**

U.S. BUS CHARTER & LIMO, INC. D/B/A U.S.
COACHWAYS,
                                         **JURY TRIAL DEMANDED**
                Defendant.
------------------------------------------------------------------X

Jasmin Johnson ("Ms. Johnson" or "Plaintiff"), by her attorneys, Joseph & Norinsberg, LLC, as and for her Complaint against U.S. Bus Charter & Limo, Inc. d/b/a U.S. Coachways ("Coachways" or "Defendant"), alleges and states as follows:

**PRELIMINARY STATEMENT**

1. This is a civil action based upon Defendant's violations of Plaintiff's rights guaranteed by the: (i) anti-discrimination and anti-sexual harassment provisions contained under § 296 (1)(a) of the New York State Human Right Law ("NYSHRL") and Title 8 of the Administrative Code of the City of New York, also known as the New York City Human Rights Law ("NYCHRL"); (ii) anti-retaliation provisions under the NYSHRL and the NYCHRL; (iii) aiding and abetting liability provision under the NYCHRL; and (iv) any other causes of action that can be inferred from the facts set forth herein.

2. Defendant operates and manages a national bus charter company. Plaintiff began working for Defendant in March of 2015 as a clerk for Defendant's guest services. In July of 2016, Plaintiff was directed to report to Defendant's manager Nicholas Cianciaruso ("N.C.") who immediately subjected Plaintiff to discrimination and harassment on the basis of her gender, which directly interfered with her work performance and created a hostile work environment.

1

3. Specifically, Plaintiff was repeatedly subjected to inappropriate and unsolicited remarks, overtures and piercing sexual stares from N.C. This unlawful conduct did not subside despite Plaintiff's repeated rejections and formal complaint to Defendant's human resources department ("HR").

4. Further, Defendant has a shameful history of engaging in retaliatory practices against employees who exercise their rights under the anti-discrimination laws. Shortly after Plaintiff's complaint, N.C. abused his authority and engaged in a retaliatory campaign in the form of undeterred hostility, critical supervision and disciplinary action. Defendant knowingly and willfully aided and abetted to the unlawful conduct by permitting N.C. to remain Plaintiff's supervisor and turned a blind eye to blatant acts of retaliation that culminated in Plaintiff's constructive discharge.

5. Accordingly, Plaintiff brings this action to remedy Defendant's violations of the NYSHRL and NYCHRL during the applicable statute of limitations.

## JURISDICTION AND VENUE

6. This Court has Jurisdiction over the parties under 28 U.S.C. § 1332, since Plaintiff is a resident of the State of Georgia, and Defendant's principal place of business is located in the State of New York, and the amount in controversy exceeds $75,000.00.

7. Venue is properly placed in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391(b)(1), since Defendant's principal place of business is located in the County of Richmond, and in the City and State of New York.

## JURY DEMAND

8. Plaintiff respectfully demands a trial by jury of all issues and claims in this action.

## PARTIES

*Plaintiff*

9. At all relevant times herein, Plaintiff Ms. Johnson, a female, was and is a resident of the State of Georgia with her primary place of work being in the City and State of New York.

10. Plaintiff Ms. Johnson was an "individual" and an "employee" entitled to protection as defined by both the NYSHRL and NYCHRL.

*Defendant*

11. At all relevant times herein, Defendant U.S. Bus Charter & Limo, Inc. d/b/a U.S. Coachways ("Coachways"), was and is a foreign business corporation, with its principal place of business located at 100 St. Mary's Avenue, Staten Island, New York.

12. At all times herein, Plaintiff worked as a clerk for Coachways' guest services department. Specifically, Coachways' own payroll records confirm that it was the entity that compensated Plaintiff during the relevant time periods.

## FACTUAL ALLEGATIONS

*Ms. Johnson's Employment with Defendant*

13. Defendant hired Ms. Johnson on March 9, 2015, as a clerk for Defendant's guest services department.

14. Throughout her employment, Ms. Johnson was recognized as an exemplary employee who was pivotal in Defendant's social media platform expansion, and who drastically improved Defendant's rating with customers.

15. Despite her accomplishments, Ms. Johnson was subjected to blatant acts of gender discrimination and sexual harassment from her supervisor N.C., which created a hostile and offensive work environment.

16. When Ms. Johnson objected to this unlawful discriminatory treatment, N.C. deployed a retaliatory agenda of flagrant harassment, which culminated in Ms. Johnson's constructive discharge on July 14, 2018.

***Ms. Johnson Becomes the Target of N.C.'s Sexual Harassment***

17. On or about July of 2016, N.C. became Ms. Johnson's supervisor.

18. On or about September of 2017, N.C.'s assistant Yolanda Torres ("Ms. Torres") informed Ms. Johnson that she was in an intimate relationship with N.C.

19. N.C.'s predatory tendencies were well known and ignored by Coachways.

20. During this time, N.C. began to inappropriately ask Ms. Johnson questions about her personal life.

21. N.C. regularly peppered Ms. Johnson with unsolicited compliments such as, "I love how you wear that outfit," "I like how you did your makeup," "You have a nice figure" and "You are so beautiful." Ms. Johnson became visibly upset by N.C.'s conduct, yet N.C. remained undeterred.

22. N.C. would often subject Ms. Johnson to prolonged and piercing sexual stares. To ensure that Ms. Johnson understood the intent behind his illicit body scans, N.C. punctuated these inappropriate stares with comments such as: "Spanish women are so hot," "Spanish women are the most affectionate," and "I would stray for a Spanish woman."

23. Additionally, N.C. repeatedly summoned Ms. Johnson to his office to discuss personal non-work-related matters.

24. On several occasions, Ms. Johnson told N.C. his actions made her extremely uncomfortable and asked him to stop. In response, N.C. would ignore her objections and intensified the volume of harassment he inflicted on her.

25. On or about April of 2018, Ms. Torres informed Ms. Johnson that she was dating someone and was looking to end her relationship with N.C. Ms. Torres told Ms. Johnson that N.C. refused to break up with her and was persistent about spending time with her. While appearing to be alarmed, Ms. Torres asked Ms. Johnson to help her avoid and/or interrupt any closed-door meetings with N.C.

*Defendant Unlawfully Retaliates Against Ms. Johnson*

26. After speaking to Ms. Torres, Ms. Johnson reported N.C.'s unlawful conduct to Coachways' human resource department ("HR").

27. In response, HR moved Ms. Johnson's desk away from N.C. and asked her to communicate with N.C. via email.

28. Despite having learned that N.C. had sexually harassed Ms. Torres and Ms. Johnson, Defendant's principal Edward Telmany ("E.T.") continued to allow N.C. to supervise Ms. Johnson.

29. To protect herself, Ms. Johnson copied HR in all of her emails to N.C. This angered N.C., who in retaliation began to scrutinize Ms. Johnson's work performance.

30. In clear retaliation for refusing to meet with him privately in his office, N.C. disciplined Ms. Johnson for having an "attitude" and "poor communications skills." In all her years, this was the first time that Defendant accused her of having an "attitude" or "poor communication skills."

31. Desperate for a pretext to further his retaliatory agenda, N.C. openly reprimanded Ms. Johnson for not knowing how to make coffee.

32. On July 14, 2018, Ms. Johnson could no longer handle N.C.'s discriminatory and retaliatory actions, as well as Defendant's failure to take any corrective action, and she tendered her resignation.

33. E.T. not only permitted N.C.'s retaliation but encouraged it. Although E.T. was fully aware that Ms. Johnson's resignation was due to N.C.'s unlawful conduct, E.T. was actually happy to learn about her resignation, and in response sent, his HR department a text with a smiley face emoji.

**FIRST CAUSE OF ACTION AGAINST DEFENDANT**
(Gender *Discrimination and Sexual Harassment in Violation of Section § 296 of the NYSHRL and Title 8 of the Administrative Code of the NYCHRL*)

34. Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

35. The NYSHRL and NYCHRL prohibit sexual harassment in the workplace and discrimination in the terms, conditions and privileges of employment on the basis of gender.

36. As set forth above, N.C. discriminated against Ms. Johnson on the basis of gender in violation of the NYSHRL and NYCHRL by subjecting her to a hostile work environment in the form of unsolicited compliments, piercing sexual stares and highly inappropriate remarks and suggestions which culminated in Ms. Johnson's constructive discharge.

37. Additionally, Defendant was well aware of N.C.'s predatory tendencies which extended beyond Ms. Torres' and Ms. Johnson's harassment complaints. Despite the foregoing notice, Defendant willfully failed to conduct a proper investigation and take adequate remedial measures.

38. As a direct and proximate result of Defendant's discriminatory conduct in violation of the NYSHRL and NYCHRL, Ms. Johnson has suffered, and continues to suffer, monetary

and/or economic damages, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## SECOND CAUSE OF ACTION
(*Retaliation in Violation of the NYSHRL and NYCHRL*)

39. Plaintiff hereby repeats, reiterates, and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

40. The NYSHRL and NYCHRL prohibit retaliation by any person against any individual who in good faith complains about discriminatory practices to which he or she has been subjected.

41. As described above, Defendant retaliated against Plaintiff in violation of the NYSHRL and NYCHRL. Specifically, Plaintiff engaged in protected activity when she formally complained of N.C.'s harassment to Defendant's HR.

42. Defendant's retaliatory conduct began almost immediately thereafter in the form of undeterred hostility, critical supervision and disciplinary action and culminated in Plaintiff's constructive discharge.

43. The temporal proximity between Plaintiff's exercise of her rights under the NYSHRL and NYCHRL, on the one hand, and Defendant's adverse employment action, on the other, gives rise to an inference of retaliation.

44. As a direct and proximate result of Defendant's retaliatory conduct in violation of the NYSHRL and NYCHRL, Ms. Johnson has suffered, and continues to suffer, monetary and/or economic damages, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-

confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## THIRD CAUSE OF ACTION
(*Aiding and Abetting in Violation of the NYCHRL.*)

45. Plaintiff hereby repeats, reiterates and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

46. Following Plaintiff's complaint, Defendant knowingly and willfully aided and abetted to N.C.'s discriminatory and retaliatory conduct in violation of the NYCHRL. Specifically, Defendant permitted N.C. to remain Plaintiff's supervisor and turned a blind eye to blatant acts of retaliation that culminated in Plaintiff's constructive discharge.

47. Defendant's principal E.T. not only permitted N.C.'s retaliation but encouraged it. Although E.T. was fully aware that Ms. Johnson's resignation was due to N.C.'s unlawful conduct, E.T. was actually happy to learn about her resignation, and in response sent, his HR department a text with a smiley face emoji.

48. As a direct and proximate result of Defendant's actual participation in the conduct that gave rise to the discriminatory and retaliatory conduct in violation of the NYCHRL, Ms. Johnson has suffered, and continues to suffer, monetary and/or economic damages, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant as follows:

i. An order awarding all back wages with appropriate statutory penalties;

ii. an order awarding compensatory damages in an amount to be determined at trial;

iii. an order awarding punitive damages in an amount to be determined at trial;

iv. reasonable attorneys' fees and costs; and

v. directing such other and further relief as the Court may deem just and proper, together with attorneys' fees, interest, costs and disbursements of this action.

Date: New York, New York
November 23, 2020

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

By: _____
Jon L. Norinsberg, Esq.
Bennitta L. Joseph, Esq.
Diego O. Barros, Esq.
110 East 59th Street, Suite 3200
New York, New York 10022
Tel: (212) 227-5700
Fax: (212) 656-1889
Email: diego@norinsberglaw.com
*Attorneys for Plaintiff*

To: U.S. Bus Charter & Limo, Inc. d/b/a U.S. Coachways
100 St. Mary's Avenue
Staten Island, New York 10305
*Defendant*